No. 30,627.

MIKE HACHINSKI, *Appellant*, v. THE BANKERS MORTGAGE COMPANY, *Appellee.*

(20 P. 2d 823.)

Opinion filed April 8, 1933.

*Thomas E. Joyce,* of Kansas City, for the appellant.

*N. J. Ward, F. A. Holder* and *J. A. Fleming,* all of Topeka, for the appellee.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Ralph Hope, Margaret McGurnaghan, John G. Egan* and *C. J. Evans,* all of Topeka, *amici curiæ.*

The opinion of the court was delivered by

BURCH, J.: The action was one to recover a sum of money which plaintiff alleged defendant wrongfully withheld. The judgment was for defendant, and plaintiff appeals.

In June, 1924, defendant sold to plaintiff a guaranteed first-mortgage, six per cent savings bond, whereby, in consideration of $360 paid annually in advance for ten years, defendant guaranteed to pay to plaintiff $5,000 at the end of the ten-year period. If payments were made monthly, they were $6.15 per thousand, or $30.75 on the

bond purchased, and plaintiff chose the monthly plan. The bond provided for cash surrender values at the end of each year, beginning with the end of the second year. Plaintiff made the initial payment of $30.75 when he made application for the bond, and made monthly payments for some four years and nine months, in the total sum of $1,752.75. In March, 1929, defendant elected to surrender the bond, and received the stipulated cash withdrawal value, in the sum of $1,170. In November, 1929, plaintiff sued defendant for $793, claiming he was entitled to all the money he had paid in, with six per cent interest up to time of withdrawal.

The petition stated a cause of action based on misrepresentation of defendant's agent, who negotiated the sale, of what the terms of the bond would be. The representation was that plaintiff could get all his money back any time he asked for it, with six per cent interest.

· Plaintiff testified to the conversation in which the representation was made. Plaintiff also testified the agent exhibited to plaintiff the outside of a sample bond, to show how the bond would look when received, and the agent said, "Then you want to read it." Pursuant to the conversation, plaintiff signed an application for a bond and made the initial payment, for which a receipt was given. The application contained the following provision:

"Any statement made by salesman at variance with the bond shall not be binding on the company."

The statement contained in the application, together with the agent's direction to plaintiff to read his bond when he received it, put plaintiff on guard against possible variance between the agent's statements and the bond. Such variance might result from misunderstanding of the conversation by plaintiff, or from attempt of the agent to deceive. If the admonition were heeded, the cause of variance could be cleared up before plaintiff accepted the bond and the parties became committed to fulfillment of the contract.

Plaintiff testified he received the bond in a heavy letter from Topeka (where the company's office was maintained), on which plaintiff saw the words "The Bankers Mortgage Company." He did not open the letter, but put it in his pocket, and then hid it in a trunk and locked the trunk. He did not open the letter until March, 1929, when, because of sickness, he needed money. Meantime, as indicated, he had been making regular payments on the bond at proper times and of proper amounts.

Plaintiff lived in Kansas City, Kan. In March, 1929, plaintiff's wife went to Topeka. She returned, and said he could get only $1,170. Plaintiff sent his wife back to Topeka, and "she brought back a paper to sign to get the $1,170." He needed the money for the expense of sickness, which still confined him to his bed, and he signed the paper. The paper was an election to surrender the bond and accept the cash withdrawal value according to the terms of the bond. The cash withdrawal value, according to the terms of the bond, was $1,170. The petition pleaded the bond was surrendered and defendant paid plaintiff $1,170.

The answer pleaded the bond and the written election to surrender the bond and accept cash surrender value. Plaintiff replied that the written instrument of election was without consideration. Plaintiff got $1,170 by virtue of the instrument. Plaintiff also replied that when he signed the election he was sick and in a weakened condition, and believed the election was a receipt for the money. Plaintiff did not support the allegation by testimony. He testified he was in bad shape, needed the money, and had to take anything—a voluntary waiver of the misrepresentation with knowledge of the facts.

The petition pleaded plaintiff did not discover the fraud practiced on him until March, 1929. The answer pleaded the statute of limitations. The petition alleged plaintiff is a foreigner of Polish nationality, and did not understand or read the bond, or have it read to him. The allegation that plaintiff did not understand the bond indicated he did read it. However, plaintiff's testimony indicated he was perfectly capable of taking care of his own business affairs, and he did not testify he could not read the bond, or could not understand the bond, or needed anybody to explain to him the difference between the agent's representation and the terms of the bond. Therefore, under the circumstances, with means of discovery in his own possession, in contemplation of law the falsity of the agent's representation of what the bond would be was discovered when plaintiff had opportunity to read the bond.

The prayer of the petition asked for a money judgment. The prayer also asked that plaintiff be given relief against forfeiture, for reformation of the bond, and for general equitable relief. The sole ground stated in the petition for relief of any kind was the misrepresentation made to induce plaintiff to buy the bond.

Defendant demurred to plaintiff's evidence, and the court took the

demurrer under advisement. The abstract shows no ruling on the demurrer. The abstract shows the cause was submitted to the court, and the court made a general finding that plaintiff should take nothing. No trial error was committed or is complained of. How much of plaintiff's evidence the court believed is not known, and an assignment of error that plaintiff was required to make his petition more definite and certain, with which requirement plaintiff complied, is representative of the merit of the appeal.

At some point in the proceeding there was injected into the case a contention that the amount plaintiff should have been paid was governed by the building and loan association law, and not by the contract. The contention is held to be without merit in the case of *Brollier v. Bankers Mortgage Co.*, post, p. 298, this day decided.

The judgment of the district court is affirmed.